

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-12-990

| | |
|---|---|
| DIANA C. JOHNSON<br><br>APPELLANT<br><br>V.<br><br>REBECCA C. MITCHELL<br>APPELLEE | **Opinion Delivered** SEPTEMBER 18, 2013<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. PR12-104-7]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED |

## BILL H. WALMSLEY, Judge

Appellant Diana Johnson appeals from the Washington County Circuit Court's appointment of appellee Rebecca Mitchell as Guardian of the Person and Estate of Lola M. Calhoun. Johnson argues that the trial court erred in appointing Mitchell guardian. We disagree and affirm.

Lola Calhoun had three children, including Johnson, with her first husband. Ms. Calhoun then married John Calhoun, who adopted her children, and together they had a son who is now deceased. Mitchell is Ms. Calhoun's granddaughter by the deceased son. According to Mitchell, she was very close to her grandparents while growing up, and Ms. Calhoun practically raised her and was like "a second mother."

The Calhouns lived in Florida for approximately ten years in close proximity to Johnson, with whom they had a close relationship at the time. When Mr. Calhoun was diagnosed with cancer in November 2010, Mitchell traveled from Arkansas and stayed for approximately one

month in Florida to care for him. During that time, the Calhouns gave Mitchell power of attorney and, more than a year earlier, had designated her as an alternate healthcare surrogate, healthcare proxy, and personal representative of their estates.[1] After Mr. Calhoun was discharged from the hospital, the Calhouns moved to Arkansas with Mitchell. Mr. Calhoun died five days after arriving in Arkansas. Soon thereafter, Mitchell transferred her grandparents' life savings, totaling approximately $280,000, to Arkansas.

In March 2011, one of Ms. Calhoun's daughters in Florida petitioned a Florida court for guardianship of her. Ms. Calhoun was compelled to return to Florida. The petition was eventually dismissed upon finding that Ms. Calhoun was not incompetent. Ms. Calhoun returned to Arkansas to live with Mitchell.

In February 2012, Johnson petitioned an Arkansas court for guardianship of Ms. Calhoun, alleging that Mitchell had exerted undue influence over Ms. Calhoun, depleted her assets, and isolated her from the rest of her family.

Following a hearing in July 2012, the trial court found that Ms. Calhoun was incapacitated as of June 7, 2012, and in need of a guardianship. In appointing Mitchell guardian, the trial court noted that Ms. Calhoun and her late husband had previously appointed Mitchell their attorney in fact, healthcare surrogate, healthcare proxy, and executrix of their estate, but had never given Johnson any such authority. The trial court also noted that Ms. Calhoun had expressed her desire to continue living with and being cared for by Mitchell. Further, the trial court found no undue influence and specifically found that Ms.

---

[1]The Calhouns designated each other as primary healthcare surrogate and proxy and personal representative, with Mitchell as alternate.

SLIP OPINION

Calhoun had made gifts and transfers to Mitchell and Mitchell's family while she was competent. The judge ruled that Ms. Calhoun had given elaborate gifts to the people she loved and for whom she wanted to provide. The trial court found that Ms. Calhoun's estate was currently valued at approximately $20,000.

Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Witham v. Beck*, 2013 Ark. App. 351, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial court to determine the credibility of the witnesses. *Id*.

A natural person who is a resident of this state, eighteen or more years of age, of sound mind, not a convicted and unpardoned felon, is qualified to be appointed guardian of the person and estate of an incapacitated person. Ark. Code Ann. § 28-65-203(a) (Repl. 2012).[2] The court shall appoint as guardian of an incapacitated person the one most suitable who is willing to serve. Ark. Code Ann. § 28-65-204(b) (Repl. 2012). Prior to the appointment of a guardian, the court shall take into consideration any request made by the incapacitated person concerning his or her preference regarding the person to be appointed guardian. Ark. Code Ann. § 28-65-204(c).

Johnson argues that the trial court erred in appointing Mitchell guardian of Ms. Calhoun's estate because, during the short period of time that Ms. Calhoun resided with

---

[2]A nonresident with the same qualifications and who has appointed a resident agent to accept service of process may also be considered for the appointment. Ark. Code Ann. § 28-65-203(f)(1).

Mitchell, Ms. Calhoun gave gifts to Mitchell and her immediate family that comprised most of Ms. Calhoun's life savings. According to Johnson, Ms. Calhoun was not in a condition to make gifts as she was ninety-one years old and, at her June 2012 neuropsychological screening, did not know the current year nor the name of the town where she was born. Johnson argues that Ms. Calhoun was "penniless" until Mitchell refunded approximately $20,000. Johnson contends that Mitchell's failure to manage Ms. Calhoun's assets should have disqualified her from acting as guardian of the estate.

Next, Johnson argues that the trial court erred in appointing Mitchell guardian of Ms. Calhoun's person given that Mitchell had isolated Ms. Calhoun from friends and family. Johnson complains that she was unable to contact Ms. Calhoun at times because she was not provided with an updated address and telephone number and that Ms. Calhoun often refused to speak on the telephone with family in Florida and elsewhere because her mind had been poisoned against them.

Finally, Johnson argues that the trial court erred in not appointing her Ms. Calhoun's guardian because she met the requirements for non-residents; had a close relationship with Ms. Calhoun in the past; and had significant family support in caring for Ms. Calhoun.

The trial court's decision turned in large part on the credibility of Johnson and her witnesses. Impartial witnesses testified that Mitchell took good care of Ms. Calhoun and that Ms. Calhoun was happy. Ms. Calhoun had the means to communicate with other members of her family but chose not to do so. Ms. Calhoun spent much of her life savings but, according to impartial witnesses, she did so at a time when she was not confused and was in

fact "very lucid." Also, Ms. Calhoun sought to provide for Mitchell, who had lost her home and virtually everything she owned in a flood in April 2011. At a time when her competency was not in question, Ms. Calhoun gave Mitchell power and authority over her person and estate, evidencing her trust in Mitchell. If Ms. Calhoun wanted to give extravagant gifts and spend money on a grand scale, to the exclusion of her family in Florida, that was Ms. Calhoun's choice. We cannot say that the trial court clearly erred in finding that Mitchell was qualified, suitable, and willing to be guardian of Ms. Calhoun's person and estate.

We also see no clear error in the trial court's determination that Johnson, on the other hand, was not a suitable guardian. Although they may have been close at one time, Ms. Calhoun was no longer close to Johnson and accused her of "playing games." It was Mitchell who traveled from Arkansas to care for Ms. Calhoun and her late husband. Also, Ms. Calhoun testified that she would rather live in a nursing home than to live with any of her children, including Johnson. Finally, Ms. Calhoun was angry that Johnson did not attend Mr. Calhoun's funeral and that she was forced to return to Florida against her wishes.

Affirmed.

GLADWIN, C.J., and HARRISON, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Cypert, Crouch, Clark & Harwell, PLLC*, by: *James E. Crouch* and *Matthew L. Fryar*, for appellee.