Cite as 2020 Ark. App. 311

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-689

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF KATHRYN GRACE KENNEDY, AN INCAPACITATED PERSON | **Opinion Delivered:** May 13, 2020 |
| DAN KROTZER<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FPR-18-613] |
| V. | HONORABLE SHANNON L. BLATT, JUDGE |
| ESTHER JULIANNE MCDANIEL<br>APPELLEE | AFFIRMED |

## MIKE MURPHY, Judge

This case arises from the guardianship of Kathryn Kennedy. Appellant Dan Krotzer appeals from the Sebastian County Circuit Court's order denying his motion to intervene and from the order granting guardianship in favor of appellee Esther Julianne McDaniel, Kennedy's mother. Krotzer raises eight points for our review. Because Krotzer lacks standing to challenge the guardianship order, we need address only three of his arguments. He argues that the court erred in denying his intervention as a matter of right. Alternatively, he argues that the court erred in denying him permissive intervention. He further argues that appellee either waived, or should be estopped from objecting to, his intervention. We affirm.

A civil-commitment hearing was conducted on November 19, 2018. Cindy Moore, the nurse manager for the Sebastian County Detention Center, testified that thirty-five-

year-old Kennedy was currently incarcerated, but due to her unstable behavior, she needed to be in a better support network. Finding that Kennedy was a danger to herself and others, the court committed her to Valley Behavior Health System. In response to Kennedy's involuntary commitment, McDaniel filed an emergency ex parte petition seeking guardianship of Kennedy and her estate, which the court granted. A hearing was held on December 4, wherein the court granted McDaniel temporary guardianship.

On December 10, Krotzer filed a petition seeking to be appointed guardian of Kennedy as "a next friend of the incapacitated person." On February 11, 2019, Krotzer filed a motion to intervene with an amended petition for substitution of guardian attached and incorporated. The motion asserted that McDaniel was unfit to serve as guardian due to her own instability and inability to care for Kennedy. McDaniel responded, objecting to the intervention and denying the allegations. Kennedy also responded and objected to the intervention by noting that the tension between the parties would inhibit her recovery and that she wanted the matter to proceed in the least contentious way possible.

A hearing on the motion was held on May 2. At the hearing, Krotzer testified that he has known Kennedy for approximately six years. He explained that McDaniel worked for him and his wife, and McDaniel would bring Kennedy to the office because McDaniel did not have a day facility for Kennedy. Krotzer testified that eventually Kennedy came to work at his farm and that he would provide meals, laundry, and transportation for her. He testified that at one point, she lived with him and his wife for a period of several months. He said he developed a parent-like relationship with Kennedy and that she asked that if something were to happen that he not let her fall back into McDaniel's control. Krotzer

testified that he did not have any financial or real estate interests tied up with Kennedy and that his interest was in protecting her. After taking the testimony, the court denied his intervention.

On May 14, the afternoon before the scheduled guardianship hearing, Krotzer filed a motion for reconsideration. At the outset of the hearing, the court said it would not address the motion because McDaniel and Kennedy did not have time to respond. The court excluded Krotzer from the courtroom but allowed his counsel to remain present.

McDaniel testified that since the temporary guardianship was granted, Kennedy had been receiving treatment at Ozark Guidance, and she enrolled Kennedy in an intensive outpatient treatment. McDaniel testified that she had been attending weekly counseling sessions with Kennedy. Next, Kennedy testified that she felt her mother would be an appropriate guardian for her at the time. Lastly, Krotzer's counsel requested that Krotzer be permitted to testify. While the court allowed Krotzer's attorney to participate in cross-examination, it denied Krotzer's request to testify. Following the hearing, the court granted permanent guardianship of Kennedy to McDaniel. Krotzer now timely appeals.

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *In re Guardianship of Helton*, 2020 Ark. App. 132, at 4–5, 594 S.W.3d 903, 905. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Id.*

3

There are two means by which a nonparty may intervene in a lawsuit: as a matter of right and by permission. The former cannot be denied, but the latter is discretionary, the denial of which will be reversed only if that discretion is abused. *Burt v. Ark. Dep't of Health & Human Servs.*, 99 Ark. App. 402, 404, 261 S.W.3d 468, 470 (2007).

Ark. R. Civ. P. 24(a) governs intervention as a matter of right providing,

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Krotzer contends he is entitled to intervene under both subsection (a)(1) and (a)(2). Regarding (a)(1), he cites Arkansas Code Annotated section 28-65-205 as the statute conferring his right to intervene. That statute provides in pertinent part that "[a]ny person may file a petition for the appointment of himself or herself or some other qualified person as guardian of an incapacitated person." The statute further provides the petition shall state "the reasons why the appointment of a guardian is sought and the interest of the petitioner in the appointment." Krotzer claims he has an interest as "a next friend" and that he established a meaningful relationship with Kennedy sufficient to warrant his intervention. He asserts that considering this relationship, Arkansas Code Annotated section 28-65-205 would allow him to file his own independent action seeking guardianship of Kennedy and then seek consolidation with this action.

As written, Arkansas Code Annotated section 28-65-205 states that "[a]ny person *may* file a petition." Ark. Code Ann. § 28-65-205 (emphasis added). Arkansas Code

4

Annotated section 28-65-201 provides that "[a] guardian of the estate *may* be appointed for any incapacitated person." Ark. Code Ann. § 28-65-201 (emphasis added). The word "may" is usually employed as implying permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used. *Schueller v. Schueller*, 86 Ark. App. 347, 353, 185 S.W.3d 107, 111 (2004). Thus, the statute Krotzer relies on does not confer an unconditional right to intervene because it is discretionary.

Krotzer likewise argues that he should have been permitted to intervene as a matter of right pursuant to Arkansas Rule of Civil Procedure 24(a)(2). In order to intervene under Rule 24(a)(2), the party must prove that (1) he has a recognized interest in the subject matter of the primary litigation, (2) his interests might be impaired by the disposition of the suit, and (3) his interest is not adequately represented by existing parties. *Ark. Democrat-Gazette, Inc. v. Brantley*, 359 Ark. 75, at 77–78, 194 S.W.3d 748, 750. If all three requirements are satisfied, the court must allow the party to intervene. *Id.*

Krotzer relies on *Whaley v. Beckham*, 2016 Ark. 196, 492 S.W.3d 65, to support his position that he has a recognized interest in Kennedy and that he should have been permitted to intervene as a matter of right. In *Whaley*, the supreme court affirmed a circuit court's finding that unrelated neighbors had a sufficient interest in a guardianship proceeding to intervene despite the ward's grandson's contesting the intervention and appointment. To support its holding, the court noted that the neighbors had cared for the ward for five years; previously been appointed as the ward's permanent guardians in related proceedings before that judgment was reversed; called the ward "mom" for fifteen or sixteen years; previously

5

maintained a health proxy for the ward; cared for the ward after her various surgeries; and managed the ward's meals, medications, bathing, and transportation.

Here, Krotzer analogizes his position to the unrelated neighbors, arguing he established a meaningful relationship with Kennedy sufficient to warrant intervention. Krotzer testified that he maintained a friendship with Kennedy for several years and acted as a mentor to her. However, under this point of appeal, *Whaley* is distinguishable because it addressed the narrow issue of permissive intervention that had been granted. *Whaley*, 2016 Ark. 196, at 7, 492 S.W.3d at 69.

Krotzer has also failed to establish that his interest in Kennedy's well-being was not adequately represented by McDaniel. While Krozter expressed concerns about McDaniel's behavior towards Kennedy, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *In re Guardianship of Helton*, 2020 Ark. App. 132, at 4–5, 594 S.W.3d at 905. Because Krotzer fails to meet the requirements under Arkansas Rule of Civil Procedure 24(a)(2), the court did not commit reversible error by denying Krotzer's intervention as a matter of right.

Alternatively, Krotzer argues he should have been permitted to intervene under Arkansas Rule of Civil Procedure 24(b). Permissive intervention is governed by the following standard:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In

exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Ark. R. Civ. P. 24(b).

To begin, the court did not abuse its discretion in appointing McDaniel as guardian. McDaniel was appointed temporary guardian before Krotzer petitioned the court seeking to be appointed guardian. The court's selection of McDaniel tracked the guardianship order-of-preference statute that confers a preference for appointment as guardian on persons having a "relationship by blood or marriage to the person for whom guardianship is sought." Ark. Code Ann. § 28-65-204(b)(4). Further, the appointment was appropriate because it is consistent with Arkansas Code Annotated section 28-65-204(c), which requires the court to consider any request made by the incapacitated person concerning her guardian preference. Not only did Kennedy respond to Krotzer's motion objecting to his intervention, she also testified she preferred McDaniel be appointed. Additionally, after the court ruled that Krotzer not be permitted in the courtroom during the permanent guardianship hearing, it stated the following observation.

> Looks like your client just took a big sigh of relief, Mr. Ray, upon Mr. Krotzer leaving the courtroom—and she is—I know the record can't always reflect what the Court sees, but as he was leaving the courtroom, your client took a deep breath and is actually smiling probably for the first time since I've seen her in this courtroom and court proceedings. So I think that's important to note.

Krotzer maintains that his interest in Kennedy is based on his friendship and a mentor-like relationship with her. He again analogizes his situation to the neighbors in *Whaley* and argues that his friendship with Kennedy is a recognized, protected interest. The holding in *Whaley* turned on the specific facts in the record and is distinguishable from Krotzer's situation and relationship with Kennedy. Here, the evidence established that

7

Krotzer has a general interest in Kennedy's wellbeing; however, his involvement with her was not as extensive as he was never a former caretaker, had never been her guardian, and never maintained a healthcare proxy for her. Further, we find it significant that the circuit court gave due regard to appointing a blood relative and to Kennedy's preference. Under these facts, the circuit court did not abuse its discretion in denying Krotzer's motion to intervene.

Krotzer argues that McDaniel waived or should be estopped from asserting any argument that he should not be permitted to intervene because McDaniel consented to his participation in the case for several months. To support this argument, Krotzer contends that his original petition should have been viewed as a motion to intervene. We disagree.

The proper procedural method for a nonparty to enter a probate proceeding is by filing a motion to intervene pursuant to Arkansas Rule of Civil Procedure 24. *See Reynolds v. Guardianship of Sears*, 327 Ark. 770, 771, 940 S.W.2d 483, 484 (1997); *see also Whaley*, 2016 Ark. 196, at 5, 492 S.W.3d at 68. Once Krotzer filed his motion to intervene, both McDaniel and Kennedy objected to his intervention. Further, nothing dispositive was handled in the two months that Krotzer contends he was permitted to participate before his formal motion to intervene was filed. Thus, his waiver and estoppel arguments are without merit.

Lastly, Krotzer makes several arguments to support his contention that the court erred in granting a guardianship in favor of McDaniel. In *Reynolds*, 327 Ark. 770, 940 S.W.2d 483, the appellant, the ward's attorney, sought to intervene in a guardianship case filed by a blood relative. The *Reynolds* court affirmed the circuit court's finding that the appellant had

no interest in the guardianship and thus was considered a nonparty. The supreme court further affirmed the circuit court's finding that the appellant lacked standing to challenge venue in a responsive pleading pursuant to Arkansas Rule of Civil Procedure 12. Our supreme court held that because the appellant was a nonparty to the proceeding, he lacked standing to challenge the proceeding. *Reynolds*, 327 Ark. at 776, 940 S.W.2d at 486.

Similarly, here, by affirming the circuit court's finding that Krotzer was not permitted to intervene, he is considered a nonparty. Krotzer accordingly lacks standing to challenge the court's appointment of McDaniel as Kennedy's guardian.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Taylor Law Partners, LLP*, by: *Nick Mote* and *Rick Woods*, for appellant.

*Wayne Williams Law Office, PLLC*, by: *Wayne Williams*, for appellee.

*Caddell Reynolds, P.A.*, by: *Blake A. Ray*, for Kathryn Kennedy.