Cite as 2022 Ark. App. 469

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-21-528

| | |
|---|---|
| IN THE MATTER OF LINDA RUSHTON SELMAN, AN INCAPACITATED PERSON | Opinion Delivered November 16, 2022 |
| FRANK D. SELMAN | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14PR-2020-31] |
| APPELLANT | |
| V. | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| ROBERT RUSHTON HURLEY | |
| APPELLEE | AFFIRMED |

**STEPHANIE POTTER BARRETT, Judge**

Appellant Frank Selman appeals the Columbia County Circuit Court's appointment of Rushton Hurley, Frank's stepson, as guardian of the person and estate of his wife, Linda Selman. On appeal, Frank argues (1) that the circuit court's findings and ultimate conclusion that it was in Linda's best interest to appoint her son, Rushton, a resident of California, as her guardian is clearly erroneous, especially in light of the opinions of the forensic psychological expert and the attorney ad litem that he should be appointed as guardian; (2) the circuit court erred as a matter of law when it ruled that a nonresident of Arkansas may be appointed guardian of an adult; and (3) the circuit court erred as a matter of law in finding an investigation by the Arkansas Department of Human Services, Adult

Protective Services was not binding on the court nor relevant. We affirm the circuit court's decision.

Linda has three children from her first marriage to Robert Hurley—Rushton, Elizabeth, and Edward. After divorcing Robert, Linda and the children moved back to Linda's hometown of Magnolia, and Linda taught English literature at Southern Arkansas University. Linda met Frank, who was twenty years her junior, when he was her student; they began dating and married in February 1984. Frank attended optometry school in Memphis, and he returned to Magnolia and opened his clinic in Linda's father's former optometry clinic. Linda and Frank have a son, Frank David, who is autistic and lives in a group home in Arkadelphia.

In March 2020, Rushton filed a petition requesting to be appointed guardian of Linda's person and estate due to her diagnosis of Alzheimer's and/or dementia. When he filed the petition, Linda was in the physical custody of the Arkansas Department of Human Services, Adult Protective Services pending a hearing scheduled later that month regarding allegations of adult abuse by Frank. Rushton further alleged in his petition that Linda needed protection from Frank, asserting that Frank had neglected her physical well-being, emotionally abused her, and had attempted to transfer her separately owned assets to himself. Rushton appointed his brother, Edward, a resident of Fayetteville, Arkansas, as his resident agent for service of process.

In his answer to Rushton's petition, Frank admitted Linda is an incapacitated person requiring the appointment of a guardian of both her person and estate, but while stating

Rushton "may be appointed guardian even if he lives out of state," Frank asserted that it was not in Linda's best interest for Rushton to be appointed guardian because he would be unable to render the care, assistance, and attention Linda needed. In a counterpetition, Frank asked the circuit court to appoint him as Linda's guardian because he is her husband and legally qualified to serve.

On August 7, 2020, Rushton filed a petition to be appointed the temporary guardian of Linda's person and to remove Frank from the home; in support of this petition, he cited his concern regarding a mass in Linda's abdomen for which Frank did not seek medical care, as well as the fact that Frank had fired the persons employed by Southern Caregivers who had been providing around-the-clock care for Linda. Affidavits from two caregivers supporting Rushton's concerns were attached to the petition. On August 11, the circuit court entered an order appointing Rushton the temporary guardian of Linda's person for ninety days; in a supplemental order entered on August 14, Frank was ordered to vacate his and Linda's residence until a hearing on the appointment on August 17. On August 17, the circuit court continued the appointment of Rushton as the temporary guardian of Linda's person for ninety days from entry of that order; gave Rushton the authority to employ caregivers for Linda; and established visitation and telephone privileges for Frank.

On September 11, 2020, the circuit court entered an order directing Arkansas Department of Human Services, Adult Protective Services, to release records of its investigation into the alleged adult maltreatment of Linda pursuant to Rushton's request for such information. No objection was made to this request.

On September 15, Rushton filed a motion to modify Frank's telephone privileges and in-person visitation, asserting that Frank continued to upset Linda with grievances about the guardianship proceeding. He requested that Frank's telephone conversations be limited to one call a day on the days he did not visit in person, with no discussion about the guardianship or his personal objections with Linda. An agreed order was entered on November 13, continuing Rushton's appointment as temporary guardian of Linda's person and providing that a caregiver, without interfering with visitation, remain in the room and report any incidents the caregiver believed caused Linda distress. Frank was directed to report any conduct by the caregivers he believed interfered with his visitation.

The circuit court appointed an attorney ad litem for Linda, who filed her report with the circuit court on June 9, 2021, noting that Linda's children and Frank all love Linda and that Linda was troubled that her children were trying to keep Frank away from her. It was the ad litem's opinion that Linda was an incapacitated person within the definition of Arkansas law. Although noting that the preference of an incapacitated person shall be taken into consideration in appointing a guardian and that Linda wanted Frank to be her guardian and to move home immediately, the ad litem conceded that the circuit court has great discretion in its choice of guardian. The ad litem recommended that Frank be named as the guardian of Linda's person and estate, noting that the Arkansas Department of Human Services investigation was unsubstantiated for abuse and neglect, and therefore, there was no credible evidence of abuse or neglect before the court. The ad litem also favored Frank because he lives in Magnolia, while Rushton lives in California, and she did not believe

4

Rushton's use of caregivers and extended family to help him was a practical or safe plan for Linda. The ad litem attached the psychologist's report to her own report; the psychologist also recommended Frank as the most appropriate guardian for Linda, noting that he loves her, wants to take care of her, and wants to live with her in the family home as long as that is physically possible. The psychologist further recommended that Linda's three older children visit Linda once a month for a four-day weekend without Frank present.

After a multiday hearing spread over several months, the circuit court entered an order on July 28, 2021, finding that Linda is an incapacitated person in need of a guardian for her person and estate and appointing Rushton as her guardian. The order noted that Rushton believes he should be Linda's guardian due to concerns about Frank's treatment of Linda and the allegation that Frank had taken advantage of her financially; Frank believes he should be Linda's guardian because he knows her better than anyone else, he loves her, and he lives in Magnolia; the psychologist opined that Frank is the most appropriate person to be guardian because he loves Linda and wants to take care of her; and the ad litem also believed Frank should be named guardian because the DHS investigation was unsubstantiated, there was no credible evidence of abuse or neglect, Frank lives in Magnolia, Rushton would have to rely on caregivers and extended family, Linda needs a guardian who is physically close to her and lives with her, and there was no convincing evidence Frank had attempted to transfer Linda's assets to himself. The order acknowledged that Linda does not believe she needs someone with her all the time, but if she had to have a guardian, she "guessed" she would have to say it should be her husband; she loves Frank and her children

5

and does not want to hurt anyone's feelings; she wants Frank to move back into the house; Frank had not verbally or physically abused her; and she trusts Rushton to do what he thinks is in her best interest.

In its order, the circuit court found Linda was capable of expressing her wishes and had done so, but she was not capable of determining what was in her best interest—and her request that Frank be named her guardian was not in her best interest. The court appreciated the time and input provided by both the psychologist and ad litem, but it disagreed with both of them as to who should serve as Linda's guardian. The court specifically found that Frank was not a credible witness, and while he testified he loves Linda very much, he had told Linda that she had ruined his life, did not have his back, and had manipulated him; he intimated to Linda that her alcohol use during pregnancy may have caused Frank David's autism, without any medical evidence to support that assertion; he denied verbally abusing Linda, although he admitted he had called her a manipulative liar and had cursed and yelled at her; he described life with Linda as very unpleasant; and he had engaged in at least seven or eight extramarital affairs that he admitted. The circuit court found that Frank's disdain for Linda was substantiated by other witnesses, including several caregivers and Rushton. The court noted that it was especially appalled at Frank's refusal to repair the toilet closest to the living room, where Linda spent most of her time, and his requirement that the caregivers place towels on the floors so Linda would not soil them if she had an accident, finding that Frank's refusal to repair the toilet was unfeeling at best and demeaning at worst.

The circuit court determined that Frank was not suitable to be the guardian of Linda's person.

The circuit court further found Frank was also unsuitable to be the guardian of Linda's estate for the same reasons he was unsuitable to be the guardian of her person and because Frank's personal interests were in conflict with Linda's best interest. It found Frank had used marital funds to purchase property and then titled it solely in his name; he had used some of Linda's retirement and Social Security funds to pay for his attorney in the guardianship proceeding, which was in bad faith; and he had caused a document to be prepared that grossly divided their marital property unequally, and Linda had executed it, even though she signed an affidavit the same day stating that she did not understand the document and had signed it under duress.

The circuit court specifically found that it had no confidence that Frank would conduct his life any differently if named Linda's guardian than he did before Rushton filed the petition for guardianship. Frank continued to work and travel; therefore, he would also have to utilize caregivers for Linda, but he never stated a plan for obtaining caregivers, even though the agency currently providing caregivers had said it would no longer do so if Frank was named guardian. The court noted that it was not overly concerned with outdated food in the refrigerator, it was concerned that Frank was the only person who insisted that Linda be fed "old" food.

The court addressed the November 2019 report of suspected maltreatment of Linda made to the Arkansas Department of Humans Services, Adult Protective Services, and the

7

March 2020 notice of unfounded allegations of caregiver neglect and exploitation, which was used by both the psychologist and the ad litem to support the appointment of Frank as Linda's guardian. The court stated that "the conclusion of the Adult Protective Services is not binding on this Court, nor is it relevant." It went on to further explain that there was no evidence of the alleged facts prompting the initial complaint or the steps and processes undertaken in the investigation, and it stated that neither the complaint nor the "unfounded investigative determination" had any effect on its decision.

The court found that Rushton was legally qualified to serve as Linda's guardian; that Frank's argument that a nonresident could not be appointed was not supported by Arkansas law; and that, while not an ideal situation with Rushton living in California, there was undisputed testimony that Linda had seen improvements since Rushton had been named her temporary guardian. The court found that it was in Linda's best interest for Rushton to be named the guardian of her person and estate.

The court acknowledged Linda's desire for Frank to move home as well as the psychologist's and ad litem's opinions that Frank should be able to return home. It stated that Frank could return to the home under certain conditions, including that Linda was never left unattended; Frank was to see to Linda's needs while in the home; an outside caregiver was to have "eyes on" contact with Linda every forty-eight hours if Frank was in the home for more than twenty-four hours; Frank could not harass or interfere with the caregivers; Frank must give one week's notice when he was not going to be in the home so that appropriate caregiver arrangements could be made; Frank could not verbally abuse or

demean Linda; Frank and Rushton must each notify the other if Linda needs medical attention while not in one person's care; and Linda's caregiver expenses would be paid one-half by the guardianship account and one-half by Frank.

In *In re Guardianship of Gill*, 2022 Ark. App. 243, at 6–7, 646 S.W.3d 387, 390–91 (*reh'g denied* July 13, 2022), this court set out the standard of review for guardianships:

> Our appellate courts review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Martin v. Decker*, 96 Ark. App. 45, 237 S.W.3d 502 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *In re Guardianship of Kennedy*, 2020 Ark. App. 311, 603 S.W.3d 551. However, subject to statutory restrictions, the selection of a guardian is a matter largely committed to the sound discretion of the appointing court. *Martin, supra.* This standard of review accords greater deference to the circuit court than the clearly erroneous standard. The appellate courts will not reverse a case involving an application of guardianship in the absence of a manifest abuse of discretion. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Spurling v. Est. of Reed*, 2018 Ark. App. 185, 544 S.W.3d 119.

In his first point on appeal, Frank argues that the circuit court erred in appointing Rushton Linda's guardian instead of him because the psychologist and the ad litem both concluded that he was the better choice, and Linda expressed her desire for Frank to be her guardian. He contends that for the circuit court to appoint Rushton as guardian, it had to disregard expert opinions and even Linda's own desire. He claims that all other witnesses were "simply a 'he said, she said' situation." In support of his argument, he cites Arkansas Code Annotated section 28-65-204(b)(3)-(4) and (c) (Repl. 2012), which provides that when appointing a guardian for an incapacitated person, a court shall take into consideration certain factors, including the request of an incapacitated person's spouse, the relationship

by blood or marriage to the person for whom guardianship is sought, and the incapacitated person's preference for his or her guardian. He also argues that Rushton lives two thousand miles away from Linda, which should negatively impact Rushton when considering whether he is qualified and suitable to serve, as required by Arkansas Code Annotated section 28-65-210(3) (Repl. 2012). Frank maintains that the opinions of the psychologist and ad litem should have been given greater weight by the circuit court, not "essentially ignored."

The statute does not require a rigid order of preference; rather, it is left to the sound discretion of the court to determine who would act in the best interest of the incapacitated person. *Martin v. Decker*, 96 Ark. App. 45, 237 S.W.3d 501 (2006). As stated above, the circuit court's selection of a guardian is a matter largely committed to its sound discretion, and this court will not reverse that decision in the absence of a manifest abuse of that discretion. *In re Guardianship of Gill*, *supra*. The testimony of the other witnesses was not just "he said, she said" as Frank claims—many of Linda's caregivers testified as to the manner in which Frank treated Linda; his statements about how difficult his life is with her; his refusal to do things to make Linda's life more comfortable, such as raise or lower the thermostat or repair the toilet; and his comments to one of the caregivers that he would lose $2 million if he divorced Linda. Frank admitted that he had taken trips and engaged in multiple extramarital affairs over the years, even though he knew it hurt Linda when she learned of them. While the circuit court was required to consider recommendations and preferences for guardian, it was not required to abide by those recommendations and preferences. It is the circuit court's responsibility to determine witness credibility; in this

case, the circuit court specifically determined that Frank was not a credible witness and that appointing Frank as guardian was not in Linda's best interest. It is not this court's function to reweigh the evidence and the credibility of the witnesses, which is essentially what Frank is asking us to do. We hold that the circuit court did not abuse its discretion in appointing Rushton as Linda's guardian.

Frank next argues that the circuit court erred as a matter of law when it ruled that a nonresident of Arkansas may be appointed a guardian of an adult. Arkansas Code Annotated section 28-65-203(a)(1) (Supp. 2021) provides that a natural person is qualified to be appointed guardian of the person and estate of an incapacitated person if he or she is a resident of Arkansas who is at least eighteen and of sound mind, and who is not a convicted and unpardoned felon or a convicted and unpardoned felon who is found to be otherwise qualified after disclosing such information. Subsection (f)(1) of this section provides:

> A nonresident natural person possessing the qualifications in this section, except as to residence, who had appointed a resident agent to accept service of process in any action or suit with respect to the guardianship and has caused the appointment to be filed with the court, whether or not he or she has been nominated by the will of the last surviving parent of a minor resident of this state to be appointed as guardian of the minor, is qualified for the appointment.

Frank contends that the phrase "whether or not he or she has been nominated by the will of the last surviving parent of a minor resident of this state to be appointed as guardian of the minor" restricts such appointments of nonresident natural persons except in the case of minors. We disagree. In *Martin*, *supra*, the incapacitated person, Mary Ann Daley, lived in El Dorado. Daley's brother, Robert Decker, lived in Nebraska, and her daughter, Laurie

11

Martin, lived in California, and both sought guardianship of Daley's person. The circuit court awarded guardianship to Decker, and Martin appealed. This court affirmed the circuit court's decision and cited Arkansas Code Annotated section 28-65-203(e)[1] for allowing a nonresident natural person meeting all other qualifications for appointment of guardian other than residence to be qualified to be guardian if a resident agent is appointed and the appointment has been filed with the court. *See also Johnson v. Mitchell*, 2013 Ark. App. 498 (noting that a nonresident may be considered for appointment as guardian if qualified and if a resident agent has been appointed to accept service of process). This issue has already been decided by this court, and the circuit court properly considered, and ultimately awarded, Rushton guardianship of Linda.

Frank's last point on appeal is that the circuit court erred as a matter of law in finding that an investigation by the Arkansas Department of Human Services, Adult Protective Services, was not binding on the court, nor was it relevant. He argues that it must be considered by the circuit court pursuant to Arkansas Code Annotated section 28-65-212(e) (Supp. 2021), which provides that any existing Arkansas Department of Human Services evaluation of which the court has notice must be considered by the court. We disagree. What was introduced into evidence was a "Notice of Unfounded Investigative Determination" citing unfounded allegations of caregiver neglect and exploitation, not an evaluation. The circuit court explained in its order why it chose to give no weight to the

---

[1]This section was redesignated to 28-65-203(f)(1) in 2011.

unfounded finding—because there was no information regarding the circumstances surrounding the initial report or the steps taken in the investigation. It is the circuit court's responsibility to determine relevance and the weight to be accorded the evidence, and this court will not reweigh the evidence on appeal.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Crane, Phillips & Rainwater, PLLC*, by: *Steve R. Crane*, for appellant.

*Eugene Bramblett*, for appellee.

13